THOMPSON, J.
 

 ' This is a suit for additional salary as director of the Asiatic and European Executive Department, director of Foreign Departments, and sales manager for the International Trade Exhibition, Inc., a corporation organized in this city in 1924.
 

 The term for which additional salary is claimed is from February 1 to December 31, 1925, and the rate per month is $250 for the first three and one-half months and $350 per month for the last seven and one-half months, aggregating for the entire period the sum of $3,500.
 

 The petition alleges, substantially: That the plaintiff was employed in the respective capacities designated at a salary of $500 per month, beginning February 1st, of which he received one-half at the end of each month, the balance to be paid when the exposition opened. That on May 16, 1925, his salary was increased to $700 per month, paid and to be paid as before stated.
 

 That a reorganization took place in December, 1925, in which the former president, who made the contract with him, was replaced by one S. Odenheimer. That thereafter the new president instructed or requested him to make certain representations which the petitioner considered to be false and would reflect upon petitioner’s personal integrity and possibly subject him to criminal prosecution for fraudulent use of the United States mail. That he refused to comply with the request, whereupon his resignation was called for and was given and accepted, effective December 31, 1925.
 

 The answer denies any indebtedness to the plaintiff; alleges that the charges made by plaintiff were without foundation, but within themselves would have been sufficient cause for plaintiff’s discharge. It is alleged that plaintiff voluntarily resigned after having been requested to do so.
 

 There was judgment in plaintiff’s favor for the full amount claimed.
 

 This is not a suit for unearned salary, due by reason of plaintiff’s having been discharged without just cause, but is for additional salary for the full period for which plaintiff was in the employ of the defendant. The question, therefore, as to whether plaintiff was dismissed, or whether there was just cause for his dismissal, is not an issue in the case.
 

 The real question, as we see it, is whether the president was authorized to employ the plaintiff and to fix his salary, and, if not, whether the acquiescence of the defendant in accepting the service of the plaintiff and the payment of his salary at $250 per month for the entire period of his service binds the defendant for the additional salary as promised by the president.
 

 The testimony of the president, Wallace, and that of the plaintiff shows that plaintiff wag employed at $250, payable at the end of each month, with a like amount- additional to be paid when the exposition opened. The plaintiff continued in the employment until he resigned, and there is no question but that he performed the services exacted of him during that period. He was paid his salary at $250 per month for the entire period, the last payment being for $175, evidenced by a check sent him when his resignation was accepted, and which was payment in full for his December salary.
 

 In view of this situation, it is quite clear that the defendant company acquiesced in
 
 *393
 
 and ratified the contract made by the president with the plaintiff to the extent and in so far as the contract fixed the salary at $250 per month.
 

 It is significant that while the petition alleges that plaintiff was to get $700 per month from May 16 to December SI, 1925, and while the judge below allowed that amount, there is not a word said in the testimony of either the plaintiff or of Wallace in reference to a raise of the salary as originally fixed to $700 per month. Nor is there any evidence in the record that would justify the claim for the increased salary.
 

 A
 
 further fact of material importance is that the alleged agreement to pay the additional salary when the exposition opened was never made known to the board of directors.
 

 Wallace does not say that he informed the board and he did not know whether the board was informed otherwise.
 

 One Murphy became a director in April, 1925, and in August, 1925, was made chairman of the board, serving until December 12th, when Mr. Odenheimer assumed charge.
 

 He testified that while Wallace said something about such agreement, the matter was never brought before the board.
 

 Mr. Deckest, the secretary, who kept the minutes and who attended all meetings of the board, testified that no such agreement to pay plaintiff additional salary was ever submitted to the board or to the executive committee.
 

 Aside, therefore, from the testimony of the plaintiff and his alleged employer, there is no evidence whatever in the record to establish a contract for the additional salary claimed. Such a contract was never brought to the attention of the board or to any officer of the corporation charged with the disbursement of the funds and the payment of salaries. Why the fact of such a contract, if there was one, was concealed from the board and from the officer who issued the salary cheeks is not explained. The explanation may be found in the fact that the pláintiff and the president, who claims to have made the contract, were apprehensive that such an onerous contract, if made known, would have been repudiated by the board at the very beginning.
 

 It is argued that the defendant cannot reap the benefit of the employment of the plaintiff and repudiate the obligations arising from same acts, on the principle that an agent’s acts cannot be approved in part and disapproved in part.
 

 The principle is not at all applicable here.
 

 The defendant approved the contract only in so far as it came to its knowledge and to the extent of paying the salary as claimed by the plaintiff each month.
 

 That salary, the defendant had every reason to believe, was compensation due the plaintiff for his services. Any other or additional salary was never made.known to the defendant nor claimed by the plaintiff. In these circumstances, we are unable to perceive how it can properly be said that the defendant is now repudiating a contract after accepting the benefits thereof. Nor can we perceive how the defendant can be said to ratify a contract of which it was kept in entire ignorance.
 

 It is said that it was the duty of the board of directors to find out what kind of a contract .was entered into between the plaintiff and the president of the company.
 

 But we do not think so under the circumstances of this case. The secretary had no authority to question the employment of the plaintiff. The plaintiff was carried on the pay roll at a certain salary, and at the stated periods of payment the secretary issued him his salary cheek. The board, not being officially informed as to plaintiff’s employment or of the salary he was promised, was not required to institute an inquiry.
 

 The board had a perfect right to assume that the salary was $250 per month, as that was all that plaintiff claimed. If he had any
 
 *395
 
 claim or demand held in reserve, it was his •duty to have so advised the board or its secretary. •
 

 Our opinion is that the defendant’s acceptance of the services of the plaintiff and payment to him the monthly stipulated salary, as claimed by him, can, under no principal of law or equity, be construed into an approval of or an acquiescence in a contract to pay an additional salary when the exposition was opened, of which contract the defendant was kept in profound ignorance.
 

 The question recurs, then, Was the president authorized to bind the company for the additional salary? We think not.
 

 The only authority relied on by the plaintiff is article 28, § (a), of the by-laws, which provides:
 

 “The president shall be the chief executive officer of. the corporation; he shall preside at all meetings of the stockholders and directors; he shall have general and active management of the business of the corporation, and shall see that all orders and resolutions of the board are carried into effect.”
 

 Sec. (c). “He shall be ex officio a member of all standing committees and shall have the general powers and duties of supervision and management usually vested in the office of president of a corporation.”
 

 ' If these provisions of the by-laws were to be considered independently of all others, then it might be said that, in the absence of any special prohibition, the president, under his power of general supervision and management, would be authorized to employ the servants and mere clerical laborers and to fix their compensationr
 

 I-Iowever, the by-laws also provide: That the property and business of the corporation shall be managed by its board of directors. That the said board shall elect a president, vice president, secretary, and treasurer.
 

 It is further provided that the board may appoint such other officers and agents- as it shall deem necessary.
 

 Section 26 provides that the salaries of all officers and agents of the corporation shall be fixed by the board of directors.
 

 These several provisions, when construed together, in our opinion,' contemplate and require that the officers designated as such, as well as all-agents or emplpyees occupying important positions and discharging duties other than that of mere laborers or servants performing work of a menial nature, are required to be named, appointed, or employed, if you will, by the board of directors, and the salaries of all such officers, agents, and employees are likewise required to be fixed by the board of directors.
 

 It is sought to escape this interpretation of the by-laws by saying that the plaintiff is neither an officer nor an agent of the corporation.
 

 But counsel fails to give the plaintiff any character or title, or to put him into a class not coming within the purview of the provisions of the by-laws referred to.
 

 Surely the plaintiff would not submit to being called a mere servant or laborer.
 

 Indeed, he refused to punch the time clock or to have his hours of work regulated, because it would put him in the class of a worker and humiliate him before the distinguished people, such as the British consul general, with whom he had to come in contact in the discharge of his duties.
 

 In his petition and in his evidence, the plaintiff classed himself as a director for the European and Asiatic Department and the Australian Department, and later as a director of the Latin-American Department of the Exposition. He was an under executive, an assistant, as it were, to the president.
 

 We can hardly conceive of a position in this corporation further removed from that of an ordinary employee and more akin to that of an officer, agent, or director than the position held by the plaintiff.
 

 Our conclusion is, therefore, that the plaintiff falls within that class whose employment
 
 *397
 
 was required to be made with the consent of the board of directors and whose salary was to be fixed by said board.
 

 His employment not having been made by the board nor his salary fixed by the board, and there having been no acquiescence or approval by the board in so far as concerns the additional salary, he is not entitled to recover such alleged additional salary.
 

 The judgment is reversed, and the demand of the plaintiff is rejected,at his costs.